UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| TONY PATRICK MARTINELLI, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>MICHAEL J. ASTRUE, Commissioner of the )<br>Social Security Administration, )<br>)<br>Defendant. ) | Case No. C09-948-JLR-BAT<br><br>**REPORT AND<br>RECOMMENDATION** |

Plaintiff Tony Patrick Martinelli seeks judicial review of the denial of his application for disability insurance benefits and supplemental security income by the Commissioner of the Social Security Administration. Plaintiff contends that the Administrative Law Judge ("ALJ") erred (1) in finding that plaintiff's fatigue, schizophrenia, and diarrhea did not constitute medically determinable severe impairments, (2) in not according sufficient weight to the professional opinion of Mr. Martinelli's treating physicians and clinicians, and (3) in not according sufficient weight to various lay testimony. Dkt. 16 at 3.

For the reasons below, the Court recommends that the Commissioner's decision be **REVERSED** and **REMANDED** for further proceedings.

REPORT AND RECOMMENDATION – 1

# I.  FACTUAL AND PROCEDURAL HISTORY

Plaintiff, who is 34 years old, has a college degree in Math and Education and some graduate school.  Tr. 503.  He has previous work experience as a fast food worker, tennis instructor, teacher, and retail worker.  Tr. 108, 127, 160.  This last position ended in 2003.  *Id.*  Plaintiff applied for disability insurance benefits in April of 2004 with an alleged onset date of August 5, 2003; his application was denied initially on June 28, 2004 and upon reconsideration on November 24, 2004.  Tr. 37.  After a hearing on October 17, 2006, the ALJ issued a decision on December 29, 2006 finding plaintiff not disabled.  *Id.*

Plaintiff appealed, and the Social Security Appeals Council remanded for a new hearing because the hearing tape could not be located.  Dkt. 16 at 2.  In its remand order, the Appeals Council directed the ALJ to "offer the claimant an opportunity for a de novo hearing and to submit any available updated medical records concerning his impairments."  Tr. 33.  Following a second hearing on June 16, 2008, the ALJ issued a second decision on September 15, 2008 finding that plaintiff was not disabled.  *Id.*  The Appeals Council denied review of that decision, making it the Commissioner's final decision under 42 U.S.C. § 405(g).  Tr. 5.   Plaintiff now seeks judicial review of the Commissioner's final decision.

# II. THE ALJ'S DECISION

The ALJ applied the five-step sequential evaluation process for determining whether a claimant is disabled.  *See* 20 C.F.R. §§ 404.1520, 416.920.  At step one, the ALJ found that plaintiff has not engaged in substantial gainful activity since August 5, 2003, the alleged onset date.  Tr. 15.

At step two, the ALJ found that plaintiff had the following severe impairments: hepatitis C, HIV positive status, anxiety, bulimia, depression not otherwise specified, and

REPORT AND RECOMMENDATION – 2

methamphetamine dependence in partial remission. *Id*. The ALJ considered plaintiff's fatigue, schizophrenia, and chronic diarrhea, but did not find that they constituted medically determinable severe impairments because they were "well controlled with treatment or [were] otherwise not adequately supported by the medical evidence in the record." *Id*.

At step three, the ALJ found that plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. Tr. 15-16. In particular, the ALJ found that plaintiff's mental impairments did not create "marked" limitations of the type that would satisfy paragraph B criteria. Tr. 16.

Before proceeding to step four, the ALJ found that plaintiff had

> the residual functional capacity to perform the full range of light work as defined in 20 CFR 404.1567(b) and 416.967(b). He can adequately perform the mental activities generally required by competitive, remunerative, unskilled work (i.e. SVP I and II) as follows. He is able to understand, remember, and carry out simple instructions compatible with unskilled work. He would have average ability to perform sustained work activities (i.e. maintain attention, concentration, persistence and pace in an ordinary work setting on a regular and continuing basis, eight hours a day, five days a week or an equivalent work schedule, within customary tolerances of employer's rules regarding sick leave and absences). He can make judgments commensurate with the functions of unskilled work (i.e. simple work-related decisions). He can respond appropriately to supervision, coworkers and work situations, as well as deal with changes, all within a routine work setting not dealing with the general public.

Tr. 17.

At step four, the ALJ found that plaintiff could not perform any past relevant work. Tr. 28.

At step five, the ALJ found that considering plaintiff's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that plaintiff could perform. Tr. 29. The ALJ therefore found that plaintiff was not disabled from August 5, 2003 through the date of the decision. Tr. 29-30.

REPORT AND RECOMMENDATION – 3

### III.  STANDARD OF REVIEW

This Court may set aside the Commissioner's denial of disability benefits when the ALJ's findings are based on legal error or not supported by substantial evidence.  42 U.S.C. § 405(g); *Bayliss v. Barnhart*, 427 F.3d 1211, 1214 (9th Cir. 2005).  "Substantial evidence" is more than a scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.  *Richardson v. Perales*, 402 U.S. 389, 201 (1971); *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989).  The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving any other ambiguities that might exist.  *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995).  While the Court is required to examine the record as a whole, it may neither reweigh the evidence nor substitute its judgment for that of the Commissioner.  *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002).  When the evidence is susceptible to more than one rational interpretation, it is the Commissioner's conclusion that the Court must uphold.  *Id.*

### IV.  DISCUSSION

Plaintiff argues that the ALJ erred in finding that he was not disabled for the claimed period.  Dkt. 16 at 3.  In particular he contends that the ALJ erred (1) in finding that plaintiff's schizophrenia, fatigue, and diarrhea did not constitute medically determinable severe impairments, (2) in not according sufficient weight to the professional opinion of his treating physicians and clinicians, and (3) in not according sufficient weight to various lay testimony.  *Id*.  These contentions center on steps two and three of the sequential evaluation process and on the evaluation of plaintiff's residual functional capacity.

## A. Step Two Analysis

In the five-step sequential process used to evaluate an applicant's disability status, step two consists of determining whether a claimant has a "medically severe impairment or combination of impairments." *Bowen v. Yuckert*, 482 U.S. 137, 140-41 (1987). A finding that an impairment or combination of impairments is not severe must be "clearly established by medical evidence." *Webb v. Barnhart*, 433 F.3d 683, 687 (9th Cir. 2005) (quoting Social Security Regulation ("SSR") 85-28 (1985)). An impairment or combination of impairments can be found "not severe" only if the evidence establishes a slight abnormality that has "no more than a minimal effect on an individual's ability to work." SSR 85-28; *Yuckert v. Bowen*, 841 F.2d 303, 306 (9th Cir. 1988) (adopting SSR 85-28). Step two is therefore a "de minimis screening device" used to dispose of groundless claims. *Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir. 1996).

In this case, the ALJ found that although plaintiff had been treated or evaluated for schizophrenia, fatigue, and chronic diarrhea, those conditions "considered singly or together, have caused only transient and mild symptoms and limitations, are well controlled with treatment or are otherwise not adequately supported by the medical evidence in the record." Tr. 15.

### 1. Schizophrenia

Plaintiff challenges the ALJ's finding that schizophrenia did not comprise a medically determinable severe impairment. He asserts that the ALJ's inference from the record that "claimant's psychosis is induced by methamphetamines" is not supported by plaintiff's medical records. Dkt. 16 at 10-14. Defendant argues in his response that the acceptable medical source evidence did not support an "unqualified diagnosis of schizophrenia." Dkt. 26 at 13. These arguments indirectly address the ALJ's finding that plaintiff's schizophrenia was not adequately

REPORT AND RECOMMENDATION – 5

supported by the medical evidence, caused only transient and mild symptoms, or was well-controlled with treatment.

The medical evidence supports a diagnosis of schizophrenia. Dr. Bennett, who began treating plaintiff in March of 2004, listed schizophrenia as a possible diagnosis throughout their relationship. Tr. 311, 269, 413, 396. Dr. Bennett vacillated between diagnoses of schizophrenia and methamphetamine-induced psychosis between March 2004 and June 2006. *E.g.* Tr. 311, 281, 413, 393. However, beginning in October 2006, he adopted schizophrenia as his primary Axis I diagnosis for the cause of plaintiff's psychotic symptoms. Tr. 423, 430, 442, 448, 454, 460. In his letter of October 20, 2006, he wrote that "the longevity of [plaintiff's] psychotic symptoms, in the absence of any ongoing substance use, and the age of onset of his psychotic symptoms, point to the diagnosis of schizophrenia." Tr. 421. Plaintiff's schizophrenia is therefore medically determinable.

The record also shows that plaintiff's symptoms were neither "transient and mild" nor "well controlled with treatment." Plaintiff reported persistent auditory hallucinations even at times when he had been using his antipsychotic medication. *E.g.* Tr. 450, 423. During these periods he sometimes experienced auditory hallucinations or talked to himself, Tr. 426, felt homicidal urges, Tr. 447, and had ideas of reference or other paranoid ideation, Tr. 453, 450, 447. These records demonstrate that plaintiff's antipsychotic medications did not entirely relieve or control the symptoms of his schizophrenia, and that those symptoms could persist for months at a time, as they did from October 2006 to February 2007. Tr. 447-61. Persistent auditory hallucinations and other psychotic symptoms would have more than a minimal effect on plaintiff's judgment and ability to respond appropriately to usual work situations or deal with changes in a routine work setting. *See* 20 C.F.R. §§ 404.1521, 416.921.

REPORT AND RECOMMENDATION – 6

It appears that the ALJ may not have considered Dr. Bennett's treatment records from the period between October 2006 and April 2008.  Tr. 25.  The Appeals Council specifically instructed the ALJ to "offer the claimant an opportunity for a de novo hearing and to submit any available updated medical records concerning his impairments" on remand.  Tr. 33.  However, despite the existence of eighteen months' worth of additional treatment records from Dr. Bennett, Tr. 423-61, the ALJ states that there are "no more treatment notes from Dr. Bennett" after June of 2006.[1]  Tr. 25.  This oversight may have prevented him from properly evaluating the diagnosis and severity of plaintiff's schizophrenia.

The Court finds that the ALJ's conclusions were not supported by substantial evidence and that plaintiff's schizophrenia is a medically determinable severe impairment.  Because the ALJ did not consider plaintiff's schizophrenia in determining whether the listings of impairment were met (step three) or in determining his residual functional capacity, the ALJ's error is not harmless and remand is appropriate.

**2. Fatigue and Diarrhea**

Plaintiff also argues that the ALJ should have found that his fatigue and diarrhea constituted medically determinable severe impairments.  Dkt. 16 at 14.  Defendant responds that plaintiff's fatigue and diarrhea "were not diagnosed impairments, but side effects of medications and/or symptoms of other impairments that were diagnosed and that the ALJ found severe."  Dkt. 26 at 7.  The Court agrees with defendant.  During his testimony at the second hearing in 2008, plaintiff explicitly connected his HIV-positive status and his fatigue, stating that "HIV is

---

[1] The ALJ does note that "[t]reatment records from Harborview Medical Center during October 2006 through April 2008 reflect additional treatment for depression, HIV and bulimia…. Records also refer to episodes of psychosis (not otherwise specified) versus relapse of methamphetamine abuse."  Tr. 26 (citing Tr. 423, 429, 434, 450).  As demonstrated above, these same records list plaintiff's Axis I diagnosis as schizophrenia and refer to ongoing psychotic symptoms despite treatment and abstinence from drug use.

REPORT AND RECOMMENDATION – 7

all about fatigue." Tr. 504.  Similarly, plaintiff admits in his brief that his diarrhea is a side-effect of his HIV medications.  Dkt. 16 at 15, n.12 ("The combination of lopinavir and ritonavir (Kaletra) is used with other antiviral medications to treat [HIV] …. Diarrhea is a side effect of Kaletra.").  The record confirms that while plaintiff also had diarrhea in the past as a result of a giardia infection, his recent problems with it coincide with his start on antiretroviral medication for HIV.  *E.g.* Tr. 375 ("side effects with Kaletra, diarrhea constantly"), 415 ("diarrhea has been present since starting Kaletra").  Thus plaintiff's fatigue and diarrhea are properly considered as symptoms of his HIV-positive status or as side-effects of his medications.  The ALJ did not err in finding that the symptoms were not medically determinable severe impairments.

**B. Step Three Analysis**

At step three, the ALJ found that plaintiff's mental impairments did not meet or equal the listings for affective disorders, anxiety-related disorders, or substance addiction disorders.  Tr. 16.  The ALJ did not consider whether plaintiff's impairments meet or equal listing 12.03, schizophrenic, paranoid, or other psychotic disorders.  On remand, the ALJ should determine whether plaintiff's schizophrenia meets the criteria of listing 12.03 or, in the alternative, whether his combined mental impairments are the equivalent of any listing.  *Marcia v. Sullivan*, 900 F.2d 172, 176 (9th Cir. 1990).

**C. Residual Functional Capacity Assessment**

Should the ALJ determine that the listings above are not met, he should reevaluate plaintiff's residual functional capacity.  It appears that as a result of his step two determination, the ALJ addressed plaintiff's psychotic symptoms as a result of his drug abuse, not his schizophrenia. He found that plaintiff's psychotic symptoms "disappeared when he was off drugs and compliant with medications," Tr. 21, and gave little weight to plaintiff's reports of

REPORT AND RECOMMENDATION – 8

persistent psychotic symptoms because "the record indicates that all of claimant's impairments were significantly improved when he was compliant on medications and abstinent from drug use," Tr. 28. The record, in particular the treatment records from Dr. Bennett between October 2006 and April 2008, does not support these findings. The ALJ should therefore reevaluate plaintiff's residual functional capacity in light of those records.

Plaintiff's medical records present several periods of abstinence from methamphetamines: June through September 2004, September 2004 through March 2005, May through December 2006, and July 2007 through April 2008.[2] Tr. 321, 268, 377-378, 451, 415. Despite his abstinence at these times, plaintiff experienced psychotic symptoms including auditory hallucinations, ideas of reference, homicidal ideation, and fear of persecution in crowds. *E.g.* Tr. 308-309, 450, 423. These incidents, including times when the plaintiff experienced symptoms despite over six months of abstinence and full compliance with his antipsychotic medication, Tr. 450, 423, establish that plaintiff's symptoms were not, contrary to the ALJ's conclusion, "significantly improved" by abstinence and medication.[3] The ALJ addresses only one of these periods. Tr. 22 (referring to psychotic symptoms in June 2004).

---

[2] Defendant implies that plaintiff may have lied about these periods of abstinence. Dkt. 26 at 15. However, defendant does not explicitly challenge the factual basis of these records or present any evidence that plaintiff had engaged in illegal drug use during the periods in question. The ALJ questioned plaintiff's claims of abstinence from drugs in 2003 and 2004, Tr. 19, 22, but did not cite to any records that would indicate that plaintiff had used drugs at those times. He specifically did not question the periods of abstinence in 2006 and 2007. This Court may not make inferences for the ALJ or affirm his decision based on grounds that he did not specifically invoke. *Pinto v. Massanari*, 249 F.3d 840, 847 (9th Cir. 2001).

[3] Plaintiff asserts that these periods are relevant because the Program Operating Manual System ("POMS") section on the materiality of Drug Addiction and/or Alcoholism sets a "thirty day policy" for determining whether drug addiction is material to a finding of disability. Dkt. 16 at 13-14. He argues that symptoms occurring after thirty days of clean time should not be considered to be caused by drug use. Respondent argues that because that section only addresses drug addiction after a finding of disability, it is not relevant to the present case. Dkt. 26 at 18. In this case, the Court agrees. "An ALJ must first conduct the five-step inquiry without separating out the impact of alcoholism or drug addiction." *Bustamante v. Massanari*, 262 F.3d 949, 955 (9th Cir. 2001). Although a claimant may not be considered disabled if that disability is the result of drug addiction or alcoholism, Section DI 90070.050 requires that an ALJ make that determination only after completing the normal five step analysis. POMS § DI90070.050(B)(1). The records show that plaintiff's psychotic symptoms continued in the absence of methamphetamine use; the cause of the symptoms is irrelevant to an analysis of plaintiff's residual functional capacity.

REPORT AND RECOMMENDATION – 9

These later records show that plaintiff's psychotic symptoms were more significant than the ALJ found. Because ongoing psychotic symptoms would presumably affect plaintiff's residual functional capacity, the ALJ should reconsider that finding in light of the updated records and the foregoing.

It also appears that, due in part to his omission of schizophrenia at step two and his disregard of the updated treatment records, the ALJ discredited plaintiff's testimony regarding his psychotic symptoms. The ALJ does not directly assert that plaintiff was malingering, and he acknowledges that plaintiff's various impairments "could reasonably be expected to produce some of the alleged symptoms." Tr. 17-18. Nonetheless, the ALJ states that plaintiff was "exaggerating his symptoms" several times, Tr. 23, 28, discredits his reports of psychotic symptoms as "inconsistent with his reports to Dr. Bennett that his symptoms improved when he was compliant with medication and abstinent from drugs," Tr. 26, and gives little weight to plaintiff's hearing testimony because he "made conflicting allegations about his psychotic symptoms throughout the record," Tr. 28.

The record presents no such conflicts. While plaintiff's accounts regarding the age of onset of his psychotic systems vary widely, Tr. 26, the symptoms that he reports at his hearing in June 2008 are largely consistent with his treatment records. *Compare* Tr. 509-510 (testimony regarding auditory hallucinations of derogatory voices) *with* Tr. 308 (March 2004), 283, 280, 347 (July 2004), 372 (May 2005), 362 (April 2006), 459 (October 2006), 447 (January 2007), 438 (August 2007), 426 (March 2008). The record does not support the ALJ's reasons for rejecting plaintiff's testimony regarding those symptoms. On remand, the ALJ should reconsider the weight given to plaintiff's testimony as it relates to his psychotic symptoms in light of the diagnosis of schizophrenia and the updated records from Dr. Bennett. Similarly, the ALJ should

REPORT AND RECOMMENDATION – 10

reconsider the weight given to other medical evaluations and lay testimony in light of Dr. Bennett's treatment records from October 2006 to April 2008, which extensively document plaintiff's psychotic symptoms in the absence of drug abuse.

### 1. The ALJ's Evaluation of Dr. Bennett's Opinion

Plaintiff argues that the ALJ erred in giving little weight to the opinions of Dr. Bennett. Dkt. 16 at 17. Defendant contends that Dr. Bennett's opinions were contradicted by those of state psychiatrist Steven Haney, and that the reasons given were specific and legitimate. Dkt. 26 at 19-24.

In general, more weight should be given to the opinion of a treating physician than to a non-treating physician, and more weight to the opinion of an examining physician than to a non-examining physician. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1996). Where a treating physician's opinion is not contradicted by another physician, the ALJ may reject it only for "'clear and convincing reasons.'" *Id.* (quoting *Baxter v. Sullivan*, 923 F.2d 1391, 1396 (9th Cir. 1991)).

Where a treating physician's opinion is contradicted, the ALJ may not reject it without providing "'specific and legitimate reasons' supported by substantial evidence in the record for doing so." *Id.* at 830-31 (quoting *Murray v. Heckler*, 722 F.2d 499, 502 (9th Cir. 1983)). An ALJ does this by setting out a detailed and thorough summary of the facts and conflicting evidence, stating his interpretation of the facts and evidence, and making findings. *Magallanes v. Bowen*, 881 F.2d 747 (9th Cir. 1989). "Where the purported existence of an inconsistency is squarely contradicted by the record, it may not serve as the basis for the rejection of an examining physician's conclusions." *Nguyen v. Chater*, 100 F.3d 1462, 1465 (9th Cir. 1996). The ALJ must do more than offer his conclusions; he must also explain why his interpretation,

REPORT AND RECOMMENDATION – 11

rather than the treating doctor's interpretation, is correct. *Orn v. Astrue*, 495 F.3d 625, 632 (9th Cir. 2007) (citing *Embrey v. Bowen*, 849 F.2d 418, 421-22 (9th Cir. 1988)).

The ALJ gave little weight to Dr. Bennett's psychological evaluations of February 24, 2005, and February 15, 2006, on the ground that they "contain no reasoning and are inconsistent with Dr. Bennett's treatment notes as well as claimant's substance abuse occurrences." Tr. 24. The ALJ also gave little weight to Dr. Bennett's letter of October 20, 2006, because it was "inconsistent with Dr. Bennett's ongoing treatment notes and the record as a whole" and because "[t]he records show that Dr. Bennett felt claimant's schizophrenia was substance-induced." Tr. 26.  Finally, he gave little weight to Dr. Bennett's letter of June 3, 2008 on the ground that it is "not supported by objective evidence in the record.  He fails to identify specific functional limitations… His conclusion conflicts with the claimant's activities of daily living, which reflect a higher level of functioning." *Id.*

Even assuming that Dr. Bennett's evaluations are contradicted, the ALJ's reasons for rejecting Dr. Bennett's evaluations are not "specific and legitimate" because they rely on nonexistent inconsistencies with the record.  As demonstrated above, Dr. Bennett had considered schizophrenia as a possible alternative to methamphetamine-induced psychosis since March 2004,[4] and listed it as the probable or only source of plaintiff's psychosis starting in October 2006. *E.g.* Tr. 421, 460.  The doctor's evaluations are therefore not inconsistent with the record, or his own treatment records, in that respect.

The evaluations also are not "inconsistent with claimant's substance abuse occurrences." Dr. Bennett wrote in his evaluation of February 2005 that plaintiff had been abstinent for 90

---

[4] *E.g.* Tr. 311 (March 31, 2004: Axis I "schizophrenia versus methamphetamine-induced psychotic disorder"), 269 (September 22, 2004: Axis I "rule out methamphetamine-induced psychosis versus schizophrenia"), 413 (September 20, 2005: Axis I "probable methamphetamine-induced psychosis versus schizophrenia"), 396 (April 4, 2006: Axis I "probable methamphetamine-induced psychosis versus schizophrenia").

REPORT AND RECOMMENDATION – 12

days, Tr. 377-78; this is consistent with treatment records at the time, which state that plaintiff had last used methamphetamines in October of 2004.  Tr. 418.  Similarly, in his evaluation of February 2006, Dr. Bennett indicates "no" for the questions "Is there an indication of alcohol or drug abuse" and "Are any of the diagnosed conditions … caused by past or present alcohol or drug abuse."  Tr. 389.  The questions do not ask if there is a history of drug abuse; rather, they ask if there is an indication of drug abuse, which implies that drug abuse must be current.  At this point, plaintiff had been abstinent from drugs for five months after a relapse in August of 2005.  Tr. 400-401.  Dr. Bennett answered "no" because there had been no indication of drug abuse for five months.  These evaluations are therefore consistent with the record.

The ALJ also found that the letters fail to identify specific functional limitations.  Both of the letters, however, address the ways in which plaintiff's various mental impairments adversely impacted his ability to function.  On October 20, 2006, Dr. Bennett wrote that plaintiff had "been under treatment for debilitating depression, social isolation, and impaired concentration for several years with only minimal response" and that neuro-cognitive impairment combined with chronic schizophrenia impairs "his ability to complete tasks in a timely manner and further impairs his social functioning."  Tr. 421.  On June 3, 2008, Dr. Bennett wrote that plaintiff had "co-morbid psychiatric diagnoses of Eating Disorder, bulimic type, and Schizophrenia affecting his perceptions of self and the world around him. Impairment of social functioning, reasoning, and problem solving skills are severe."  Tr. 462.  This language sets out plaintiff's functional impairments in some detail and is not inconsistent with the record, which contains several mentions of plaintiff's poor concentration and other mental symptoms during this period.  *E.g.* Tr. 456, 447, 426.

REPORT AND RECOMMENDATION – 13

In this case, the record shows no inconsistency between Dr. Bennett's evaluations and letters and his treatment records. The ALJ failed to give specific and legitimate reasons for giving little weight to Dr. Bennett's opinions. On remand, the ALJ should reconsider the minimal weight given to Dr. Bennett's opinions in light of the treatment records from June 2006 to April 2008. Those records provide support for Dr. Bennett's evaluations of plaintiff's mental impairments.

**2. "Other Medical Source" Evidence**

Plaintiff also objects to the ALJ's analysis giving little weight to the records of the therapists and other clinicians at Seattle Counseling Services ("SCS"). Dkt. 16 at 21-22 (citing Tr. 20, 24). Defendant argues that the ALJ considered the records and weighed them appropriately. Dkt. 26 at 7-12.

"Acceptable medical sources" include licensed physicians, psychologists, optometrists, and podiatrists. SSR 06-03p. "Other medical sources" include nurse practitioners, therapists, and social workers. *Id.* The ALJ may evaluate opinions of other medical sources using the same factors applied to evaluate medical opinions of acceptable medical sources; but the ALJ may give less weight to opinions of other medical sources than to those of acceptable medical sources. *Id*. In order to reject the testimony of other medical sources, the ALJ must give "individualized germane reasons." *Smolen*, 80 F.3d at 1288-89. Lay testimony on medical diagnoses is not competent testimony, *Vincent v. Heckler*, 739 F.2d 1393 (9th Cir. 1984); however, lay testimony on a claimant's symptoms, or the extent of his functional impairments, is "competent testimony which the Secretary must take into account." *Nguyen*, 12 F.3d at 1467 (citing *Dodrill v. Shalala*, 12 F.3d 915, 919 (9th Cir. 1993)).

REPORT AND RECOMMENDATION – 14

The ALJ gives three reasons for the minimal weight given to the evaluations and observations of plaintiff's therapists: that they are not "medically acceptable sources," Tr. 20; that their diagnoses of schizophrenia are "not supported by the bulk of the record," *Id*., because "they do not fully account for the connections between claimant's drug abuse and his mental status," Tr. 24; and that their evaluations are "not appropriate given claimant's good functioning except when he relapsed on drugs," Tr. 21.  The first reason is not "individualized and germane," in that any clinician's opinion could be given little weight for the same reason; the second and third reasons are both contradicted by the record, which (as shown above) supports a diagnosis of schizophrenia and contains several instances of plaintiff's psychotic symptoms during periods of abstinence.

The SCS records in question provided documentation of plaintiff's psychotic symptoms, especially at times when he was abstaining from methamphetamines and taking antipsychotic medication.  *E.g.* Tr. 243, 244, 370 ("skewed perceptions" with six weeks clean), 362 ("unremittant audio & visual hallucinations" as well as disorganized and tangential speech with frequent derailments with five months clean).  These records need not "fully account" for any connection between plaintiff's drug use and his psychotic symptoms in order to serve as evidence of those symptoms.  The ALJ should have considered the records inasmuch as they corroborated plaintiff's functional impairments and provided documentation of his symptoms.  On remand, the ALJ should reconsider the records and the proper amount of weight to be given them in light of the law and analysis set out above.

### 3. Lay Testimony

Finally, plaintiff argues that the ALJ erred by failing to give proper weight to the testimony of plaintiff's partner, Rondo Johnston, and that of his mother and stepfather, Linda and Angelo Scalici. Dkt. 16 at 22-25. Defendant responds that the ALJ properly considered the lay testimony and gave germane reasons for rejecting it where necessary. Dkt. 26 at 15.

Lay testimony as to a claimant's symptoms is competent evidence that the ALJ must take into account, unless the ALJ expressly determines to disregard such testimony and gives specific, germane reasons for doing so. *Lewis v. Apfel*, 236 F.3d 503, 511 (9th Cir. 2001). Where an ALJ has provided clear and convincing reasons for finding a claimant not fully credible, those reasons are germane reasons for rejecting similar lay witness testimony. *See Valentine v. Comm'r Soc. Sec. Admin.*, 574 F.3d 685, 694 (9th Cir. 2009). However, an adverse credibility finding for a claimant does not necessitate rejection of all lay testimony regarding plaintiff's symptoms. "An eyewitness can often tell whether someone is suffering or merely malingering. While this is particularly true of witnesses who view the claimant on a daily basis, the testimony of those who see the claimant less often still carries some weight." *Dodrill*, 12 F.3d at 918. Lay witnesses, particularly spouses or family members, may not be dismissed out of hand because they are generally inclined to be partial to the plaintiff; rather, the ALJ must point out "evidence that a specific [witness] exaggerated a claimant's symptoms *in order* to get access to his disability benefits" to support an allegation of partiality. *Valentine*, 574 F.3d at 694 (emphasis in original).

#### a. Hearing Testimony of Rondo Johnston

The ALJ gave little weight to the testimony of plaintiff's partner, Rondo Johnston, because he had "a personal relationship with the claimant and [lacked] the expertise and possibly the motivation to offer an objective or functional assessment[.]" Tr. 27. This is not the

REPORT AND RECOMMENDATION – 16

"individualized and germane reason" that the law requires; any layperson who knew plaintiff and testified on his behalf, particularly a romantic partner, could be impermissibly discredited for the same reason. The ALJ cites no evidence that Mr. Johnston was exaggerating plaintiff's symptoms out of a desire to obtain access to disability benefits. As plaintiff's partner, Mr. Johnston was most familiar with his living situation and any functional impairments he might have, and his testimony regarding plaintiff's symptoms was competent evidence.

Defendant asserts that Mr. Johnston's testimony could be rejected because it was "unsupported by the medical record." Dkt. 26 at 25. However, Mr. Johnston's testimony did not conflict with any available medical evidence; rather, it confirmed that plaintiff's psychotic symptoms contributed to his inability to function socially. *E.g.* Tr. 516 (plaintiff "has trouble understanding what's going on around him … because of his, the voices he hears"), 517 (plaintiff "gets withdrawn" and Johnston has to remind him that people are "not saying things that he can't understand because the voices that he hears in his head are telling him one thing and when someone else tells him another thing he gets the two confused"). This testimony did not go to the existence of a "neurocognitive disability," but to the effect auditory hallucinations had on plaintiff's social function, effects that were also mentioned by Dr. Bennett in his evaluations. *E.g.* Tr. 421, 462. It was therefore supported by medical evidence. Even if it had not been, this Court may not affirm the ALJ's decision on grounds that he himself did not invoke. *Pinto*, 249 F.3d at 847. On remand, the ALJ should reconsider the weight given to Mr. Johnston's testimony in light of the above.

### b. Linda and Angelo Scalici

Plaintiff also challenges the ALJ's decision to give little weight to the statements of plaintiff's mother, Linda Scalici, and his stepfather, Angelo Scalici. Dkt. 16 at 22-25. The ALJ

REPORT AND RECOMMENDATION – 17

gave weight to these statements only "to the extent that [they] support that claimant can do work as outlined in the residual functional capacity," because they could "only write about what they [saw]," which might have been plaintiff's "exaggerated limitations." Tr. 28.

The Scalicis saw plaintiff more often than his treating psychiatrist, and would have had more opportunity to observe his functional limitations than Dr. Bennett did. Lay testimony regarding symptoms is competent even if the witness did not see the claimant on a daily basis, and even if the claimant himself is not perfectly credible. *Dodrill*, 12 F.3d at 918. The Scalicis both provided statements regarding the ability of the plaintiff to function in daily life and the impairments that his psychotic symptoms caused. *E.g.* Tr. 137, 140, 142, 149. As with other testimony, the ALJ should reconsider the Scalicis' statements in light of medical records supporting plaintiff's schizophrenia diagnosis, and give germane reasons for rejecting the statements apart from his implication that plaintiff was malingering.

## V.  CONCLUSION

For the foregoing reasons, the Court recommends that this case be **REVERSED** and **REMANDED**. On remand, the ALJ should (1) include plaintiff's schizophrenia at step two, (2) consider whether plaintiff's mental impairments meet listing 12.03 or whether they are the equivalent of any other listing, (3) reevaluate the medical and lay evidence as directed above, and (4) reevaluate plaintiff's residual functional capacity before proceeding to steps four and five. A proposed order accompanies this Report and Recommendation.

DATED this 29th day of March, 2010.

_____
BRIAN A. TSUCHIDA
United States Magistrate Judge

REPORT AND RECOMMENDATION – 18